**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTHONY P. SAUER, Director of the
California Department of
Rehabilitation,
          *Plaintiff-Appellant,*

    v.

UNITED STATES DEPARTMENT OF
EDUCATION, REHABILITATION
SERVICES ADMINISTRATION,
          *Defendant-Appellee,*

DAVID ZELICKSON,
          *Intervenor-Appellee.*

No. 10-55642

D.C. No.
2:09-cv-01161-
AHM-PLA

ANTHONY P. SAUER, Director of the
California Department of
Rehabilitation,
          *Plaintiff-Appellee,*

    v.

UNITED STATES DEPARTMENT OF
EDUCATION, REHABILITATION
SERVICES ADMINISTRATION,
          *Defendant-Appellant,*

    and

DAVID ZELICKSON,
          *Intervenor.*

No. 10-55877

D.C. No.
2:09-cv-01161-
AHM-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

1091

Argued December 6, 2011
Submitted January 26, 2012
Pasadena, California

Filed February 3, 2012

Before: John T. Noonan, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

**COUNSEL**

Ismael A. Castro (argued), Supervising Deputy Attorney General, and Julie Weng-Gutierrez (argued), Supervising Deputy Attorney General, Sacramento, California, for plaintiff, appellant, and cross-appellee Anthony P. Sauer, Director of the California Department of Rehabilitation.

Jeffrica J. Lee (argued), DOJ, Washington, D.C., for defendant-appellee and cross-appellant United States Department of Education, Rehabilitation Services Administration.

George Langendorf, Esq. (argued), Arnold & Porter LLP, San Francisco, California, for intervenor-appellee David Zelickson.

**OPINION**

IKUTA, Circuit Judge:

The California Department of Rehabilitation (DOR) and the United States Department of Education appeal from the district court's decision enforcing a 2008 arbitration award issued pursuant to 20 U.S.C. § 107d-1(a) of the Randolph-Sheppard Vending Stand Act (the Act). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## I

Some familiarity with the structure of the Randolph-Sheppard Act and the manner in which it provides for resolution of disputes is necessary to understand the sequence of events in this case. We briefly provide the relevant background.

## A

The Randolph-Sheppard Act establishes a cooperative program between the federal government and the states to assist blind persons who wish to operate vending facilities on federal property. *See* 20 U.S.C. § 107. The stated purposes of the Act are "providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting." § 107(a). The Rehabilitation Services Administration within the Department of Education administers the Act with the help of state agencies designated by the Secretary of Education. §§ 107(b), 107a(a), 107b. In participating states, these state agencies (referred to as "state licensing agencies") issue licenses to blind persons that make them eligible to operate vending facilities on federal properties within that state. § 107a(b). In order to establish a vending site, a state licensing agency must seek authorization in the form of a permit from the federal agency in control of the property on which the site is to be located. § 107a(c); 34 C.F.R. § 395.16.

State participation in the Randolph-Sheppard program is voluntary. *See* 20 U.S.C. § 107b. A state agency that wishes to participate must apply to the Secretary for designation as a state licensing agency and agree to "cooperate with the Secretary in carrying out the purpose" of the Act, § 107b(1), as well as comply with a number of more specific requirements, *see, e.g.*, § 107b(2)-(6). For example, a state licensing agency must "give preference to blind persons who are in need of

employment" when issuing licenses, § 107a(b); provide each licensed blind vendor with "such vending facility equipment, and adequate initial stock of suitable articles to be vended therefrom, as may be necessary," § 107b(2); make periodic reports to the Secretary of Education, § 107b(4); provide licensed blind vendors with relevant financial data, § 107b-1; conduct a biennial election of a Committee of Blind Vendors to represent all blind licensees in the state program, § 107b-1(2); cooperate with the Committee in the training of blind licensees, § 107b-1(3); disburse vending machine income to licensed blind vendors according to a particular formula, § 107d-3; 34 C.F.R. § 395.8(a)-(b); and use any remaining vending machine income to establish retirement and other benefits plans for the blind and to purchase, maintain, and replace vending equipment, 20 U.S.C. § 107d-3(c); 34 C.F.R. § 395.8(c).

## B

The Act also provides for proceedings to resolve two types of disputes: (1) disputes between the licensed blind vendor and the state licensing agency, on the one hand, and (2) disputes between the state licensing agency and the federal agency in control of the property on which the vending site is located, on the other.

The first type of dispute, between the blind licensee and the state licensing agency, is governed by the procedures set forth in §§ 107b(6), 107d-1(a), 107d-2(a), and 107d-2(b)(1) of the Act. At the request of any blind licensee who is dissatisfied with the operation of the program, the state licensing agency must give the blind licensee a full evidentiary hearing. 20 U.S.C. §§ 107b(6); 107d-1(a). If the blind licensee's grievances are not resolved by such a hearing, the blind licensee "may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute." § 107d-1(a).[1]

---

[1]Section 107d-1(a) provides, in full:

   (a) Hearing and arbitration

The second type of dispute, between a state licensing agency and the federal entity in control of the property on which a vending site is located, is governed by §§ 107d-1(b), 107d-2(a), and 107d-2(b)(2) of the Act. If a state licensing agency determines that the federal entity in control of the property on which a vending site is located is failing to comply with the Act, the state agency "may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute." § 107d-1(b).[2]

If a blind licensee triggers an arbitration proceeding, it is governed by § 107d-2(b)(1) of the Act.[3] In these circum-

---

Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 107b(6) of this title. If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

[2]Section 107d-1(b) provides, in full:

(b) Noncompliance by Federal departments and agencies; complaints by State licensing agencies; arbitration

Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued thereunder (including a limitation on the placement or operation of a vending facility described in section 107(b) of this title and the Secretary's determination thereon) such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

[3]Section 107d-2(b)(1) provides, in full:

The arbitration panel convened by the Secretary to hear griev-

stances, the arbitration panel is composed of one member chosen by the blind licensee, one member chosen by the state licensing agency, and one member jointly designated by the other two members. § 107d-2(b)(1). If a state licensing agency triggers an arbitration proceeding, it is governed by § 107d-2(b)(2) of the Act.[4] In this case, the panel is composed

---

ances of blind licensees shall be composed of three members appointed as follows:

> (A) one individual designated by the State licensing agency;

> (B) one individual designated by the blind licensee; and

> (C) one individual, not employed by the State licensing agency or, where appropriate, its parent agency, who shall serve as chairman, jointly designated by the members appointed under subparagraphs (A) and (B).

If any party fails to designate a member under subparagraph (1)(A), (B), or (C), the Secretary shall designate a member on behalf of such party.

[4]Section 107d-2(b)(2) provides, in full:

The arbitration panel convened by the Secretary to hear complaints filed by a State licensing agency shall be composed of three members appointed as follows:

> (A) one individual, designated by the State licensing agency;

> (B) one individual, designated by the head of the Federal department, agency, or instrumentality controlling the Federal property over which the dispute arose; and

> (C) one individual, not employed by the Federal department, agency, or instrumentality controlling the Federal property over which the dispute arose, who shall serve as chairman, jointly designated by the members appointed under subparagraphs (A) and (B).

If any party fails to designate a member under subparagraph (2)(A), (B), or (C), the Secretary shall designate such member on behalf of such party. If the panel appointed pursuant to paragraph (2) finds that the acts or practices of any such department, agency, or instrumentality are in violation of this chapter, or any regulation issued thereunder, the head of any such department, agency, or instrumentality shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel.

of one member chosen by the state-licensing agency, one member chosen by the federal agency, and one member jointly designated by the other two members. § 107d-2(b)(2). Decisions by both types of panels are "final and binding on the parties," §§ 107d-1(a), 107d-1(b), except that each is "subject to appeal and review as a final agency action for purposes of chapter 7 of [the Administrative Procedure Act]," § 107d-2(a).

The Act treats vendor-triggered arbitrations differently than state-triggered arbitrations in one significant respect. Whereas § 107d-2(b)(1) is silent as to the type of relief that a vendor-triggered arbitration panel may grant, the Act provides that if a state licensing agency triggers arbitration, and the arbitration panel determines that the federal agency is in violation of the Act, the head of the federal agency "shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel." § 107d-2(b)(2).

## II

We now turn to the facts of this case. The California DOR is the state licensing agency designated by the Secretary to administer the Act in California. In 1993, the federal General Services Administration (GSA), which manages the Roybal Federal Building in downtown Los Angeles, granted DOR a permit to establish a vending facility in the building.[5] The DOR contracted with David Zelickson, a blind vendor licensed under the Act, to operate a snack shop in the building.

---

[5]The GSA is the department responsible for managing the majority of federal properties nationwide, and manages 762 properties in California. *See* General Services Administration (GSA) Inventory of Owned and Leased Properties: California (Jan. 20, 2012, 5:32 PM), *http:// www.iolp.gsa.gov/iolp/BuildingsList.asp?sID=6&pOrd=c.*

In 1997, GSA notified DOR that it intended to terminate Zelickson's employment at the Roybal Building because of allegedly unprofessional behavior. The DOR opposed Zelickson's termination, arguing that GSA had not established "good cause" for Zelickson's removal as required by state laws governing the operation of the Randolph-Sheppard Act program, and that DOR, and not GSA, was in charge of vendor licensing and selection under the Act. Despite DOR's efforts, GSA suspended DOR's permit to operate a vending facility at the Roybal Building and issued a revocable license to another party.

In October 1998, DOR filed an administrative complaint against GSA with the Secretary and requested arbitration pursuant to § 107d-1(b) of the Act. On December 26, 2000, the arbitration panel ruled that GSA had violated the Act by expelling Zelickson without going through California's hearing process, and concluded that GSA had to reinstate Zelickson. Nonetheless, the panel determined that GSA should have an opportunity to litigate Zelickson's qualifications, and therefore directed DOR to provide GSA with a forum in which to do so. The arbitration panel held that "[i]f GSA does not exercise its options to litigate the question of Mr. Zelickson's qualifications within [30 days from the date of decision], then it must pay Mr. Zelickson the damages to which he is entitled, namely the difference between what he has been able to earn and what [the interim vendor] earned . . . plus interest on those amounts of money."

When GSA failed to reinstate Zelickson or take any steps to litigate Zelickson's qualifications within the 30-day period, DOR made numerous unsuccessful attempts to secure GSA's compliance with the 2000 arbitration award. In March 2001, DOR sent a letter to GSA insisting that GSA terminate its contract with the new vendor and reinstate Zelickson. The following month, DOR sent GSA a letter demanding GSA's compliance with the panel's decision. DOR and GSA then met with a Department of Education official who attempted

to mediate their dispute. The Department of Education media-tor informed DOR that his only role was to "facilitate dia-logue" between the two agencies and that "despite the fact that [the Department of Education] is DOR's federal oversight agency, [the Department of Education] is not in a position to exert pressure on GSA to comply with the Award." Mediation was ultimately unsuccessful because GSA maintained its position that "the arbitration panel lacked the authority to award either the vendor or [DOR] damages from the Federal government, and . . . in any event, the United States has not waived its sovereign immunity with regard to Randolph-Sheppard 'damages.' " DOR later sought help from the Cali-fornia Attorney General's Office, which sent a letter to GSA in December 2002 suggesting that the state might file suit if GSA did not comply with the award or reach some other reso-lution with DOR. This threat, too, was to no avail.

In addition to attempting to bring GSA into compliance with the 2000 arbitration award, DOR repeatedly encouraged Zelickson to consider competing for other vending locations, and advised him he was unlikely to recover damages from GSA. Although DOR assured Zelickson that taking a job at another vending facility would not jeopardize his chances of returning to the Roybal Building, Zelickson did not apply elsewhere. DOR allowed Zelickson to operate a facility at a Los Angeles traffic court location under an "interim" permit until at least 2008, much longer than the usual six months' duration for such a permit.

In 2006, Zelickson notified DOR that he was requesting an evidentiary hearing under § 107d-1(a) regarding DOR's fail-ure to compel GSA to reinstate him at the Roybal Building. DOR refused this request as untimely. Zelickson then filed a complaint with the Department of Education under § 107d-1(a) requesting arbitration of his dispute with DOR. The Department of Education convened a second arbitration panel pursuant to § 107d-2(b)(1) in order to determine whether

DOR had breached an obligation to enforce the 2000 arbitration award between DOR and GSA.

The second arbitration panel determined that DOR had breached its obligation to Zelickson. According to the panel, because GSA did not comply with the 2000 arbitration award "despite the best efforts of DOR to secure compliance short of a lawsuit," DOR had a duty to seek enforcement of the arbitration award in federal court. The panel reasoned that "[t]here is no statutory or judicial prohibition against the enforcement of an arbitration decision, and a lawsuit is the only way [a state licensing agency] can protect its interest in a facility it establishes, as well as protecting the blind vendor's interest," because "[t]he blind vendor has no right to enforce a favorable arbitration award on his own." "Even assuming that DOR has discretion whether or not to bring lawsuits against violating federal agencies," the panel held that in this case the DOR abused its discretion by failing to sue GSA given that "[t]here was no other way" to enforce Zelickson's rights.

Having concluded that DOR breached its obligation to Zelickson by failing to file a lawsuit against GSA, the panel ruled that because of this failure, "DOR became liable for the damages that were afforded to [Zelickson]" under the 2000 arbitration award. Accordingly, the panel ordered DOR to pay Zelickson $140,000 in damages, which amounted to $2,500 per month of lost earnings for the 56 months between Zelickson's improper removal on December 1, 1997, and the date on which DOR advised Zelickson "to make application for another permanent facility without waiving his rights to return to Roybal." The panel also ordered DOR to pay Zelickson $2,500 per month until it succeeded in reinstating him at either the Roybal Federal Building or a comparable facility.

DOR protested this ruling, and in November 2008, DOR filed suit against the Department of Education in federal district court, seeking review of the 2008 arbitration award. Zel-

ickson later intervened to defend the panel's decision. The district court affirmed the award, and both DOR and the Department of Education appeal.[6]

## III

This appeal raises a single question: whether the 2008 arbitration panel exceeded its authority under the Act when it ruled that DOR had a statutory obligation to sue GSA for its failure to comply with the 2000 arbitration award, and therefore was liable for damages in favor of Zelickson when it failed to do so.

## A

An arbitration decision under the Act is "subject to appeal and review as a final agency action" under the standards set forth in the Administrative Procedure Act (APA). *See* 20 U.S.C. § 107d-2(a). The APA requires a reviewing court to "decide all relevant questions of law [and] interpret constitutional and statutory provisions." 5 U.S.C. § 706. In addition, the reviewing court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A), or are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).

We review de novo the questions of law at issue in this case, and must set aside the 2008 arbitration award if it is "not in accordance with law." § 706(2)(A); *see also Del. Dep't of Health & Soc. Servs. v. U.S. Dep't of Educ.*, 772 F.2d 1123, 1139 (3d Cir. 1985) ("[U]nder 20 U.S.C. § 107d-2(a) and 5

---

[6]Although nominally on opposing sides, DOR and the Department of Education agree that the arbitration panel exceeded its authority in issuing the award against DOR; only Zelickson, as the real party in interest, defends the arbitration panel's award.

U.S.C. § 706(2)(A) our decision on legal questions is plenary.”). In deciding the legal question whether the Act requires a state licensing agency to sue a noncomplying federal agency, we do not give any special deference to the arbitration panel’s interpretation of the Act. *C.f. Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984) (holding that courts should give considerable weight to an executive agency’s construction of a statutory scheme that it is entrusted to administer). *Chevron* deference “is warranted only ‘when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.’ ” *Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)). Deference is inapplicable here because the Act does not delegate interpretive authority to the arbitration panel; instead, it gives the Secretary of Education the responsibility of administering the Act and issuing interpretive regulations. *See* 20 U.S.C. § 107(b). Although an arbitration panel’s decision is considered a final action of the Secretary for purposes of appeal, *see* § 107d-2(a), this is a legal fiction: an arbitration panel is composed of members appointed by the parties to the arbitration, not of Department of Education officials whose expertise merits our deference. *Mead Corp.*, 533 U.S. at 228. Indeed, in this case, DOE opposes the arbitration panel’s interpretation of the Act.

B

**[1]** In addressing the legal question at issue, we begin with the plain language of the Act. “Statutory interpretation focuses on ‘the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.’ ” *United States v. Havelock*, ___ F.3d ___, 2012 WL 29347 (9th Cir. Jan. 6, 2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). “If the text of the statute is clear, this court looks no further in determining the statute’s meaning.” *K & N Eng’g, Inc. v. Bulat*, 510 F.3d 1079, 1081

(9th Cir. 2007) (quoting *United States v. Mendoza*, 244 F.3d 1037, 1042 (9th Cir. 2001)) (internal quotation marks omitted). By its terms, the Act does not require a state licensing agency to sue a federal agency that refuses to comply with a § 107d-1(b) arbitration award. While a state agency that elects to participate in the Randolph-Sheppard program agrees to a number of detailed requirements and duties, *see supra* at 1095-96, there is no provision in the Act even mentioning judicial enforcement of arbitration awards, let alone requiring a state licensing agency to bring a judicial enforcement action against a federal agency that refuses to comply with the Act.

**[2]** Nor is there any such implicit requirement in the Act. To the contrary, the text of the statute weighs against an inference that Congress intended to require a state licensing agency to bring an enforcement action against a federal agency. First, the Act provides that when a state licensing agency determines that a federal entity is violating the Act, the state licensing agency "*may* file a complaint with the Secretary who *shall* convene a panel to arbitrate the dispute." 20 U.S.C § 107d-1(b) (emphasis added). As the Supreme Court has explained, "[t]he word 'may,' when used in a statute, usually implies some degree of discretion," *United States v. Rodgers*, 461 U.S. 677, 706 (1983), especially "when the same [provision] uses both 'may' and 'shall,' " in which case, "the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory," *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947). Here, Congress's use of "may" and "shall" makes clear that it has given the state licensing agency the discretion (not the obligation) to trigger an arbitration proceeding with a noncompliant federal agency while imposing a mandatory obligation on the Secretary to convene an arbitration panel upon the state's request. Because Congress gave the state licensing agency the option whether or not to pursue arbitration with a noncompliant federal agency, we can infer that Congress did not intend to impose a statutory duty on a state licensing agency to bring a judicial

enforcement action against the federal agency if it refuses to comply with an arbitration decision.

There is a second textual indication that Congress did not intend to impose such an obligation on a state licensing agency: the Act provides that "[t]he Secretary shall pay all reasonable costs of arbitration," 20 U.S.C. § 107d-2(d), but there is no requirement that the Secretary pay the costs of an enforcement action. There would be little incentive for a state licensing agency to file a complaint with the Secretary if the consequence of a successful arbitration would be that the state would have to bear either the cost of an enforcement action in federal court or, as here, the cost of remedying the federal agency's violations.

Third, the structure of the Act weighs against interpreting it as imposing a requirement on a state licensing agency to sue any noncompliant federal agency, as such an interpretation would be at odds with the Act's emphasis on cooperation between the states and the federal government. *See* § 107b (requiring a state licensing agency "to cooperate with the Secretary in carrying out the purpose of this chapter"); § 107a(c) (requiring a state licensing agency to seek authorization from a federal agency before establishing a vending site on federal property); 34 C.F.R. § 395.37(a) (giving a state licensing agency authority to initiate arbitration against a federal agency only when the SLA determines that the federal agency is failing to comply with the Act "*and all informal attempts to resolve the issues have been unsuccessful*" (emphasis added)). A state agency could reasonably decide not to pursue a lawsuit against GSA given its ongoing relationship with GSA in connection with other GSA-managed buildings.

**[3]** Therefore, the plain language of the statute weighs against interpreting the Act as imposing a duty on state licensing agencies to sue federal agencies, and holding them liable for damages if they fail to do so.

## C

**[4]** This interpretation of the text is supported by other principles of statutory construction. First, the Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (citing *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *Vaca v. Sipes*, 386 U.S. 171, 182 (1967); *Confiscation Cases*, 7 Wall. 454 (1869)).[7] Although this presumption "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers," *id.* at 832-33, there is no language in the Act that provides such enforcement guidelines to a state licensing agency; as explained above, the Act does not expressly give state licensing agencies the right, let alone the duty, to bring an action to enforce an arbitration award. In the absence of any express statement in the Act, we conclude that Congress has not varied from the general rule giving state agencies absolute discretion on this issue.

**[5]** Second, while Congress may impose requirements on states as a condition of participating in a federally funded program, it "must do so unambiguously . . . , enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (alterations in original) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). A state's acceptance of its statutory obligations is not "knowing" if the state "is unaware of the conditions or is unable to ascertain what is expected of it." *Pennhurst*, 451

---

[7]Although these cases consider the discretion of a federal agency (not a state agency), principles of federalism and comity direct us to apply the same interpretative approach when considering the discretion of a state agency to prosecute or bring an enforcement action.

U.S. at 17. If legislation compels a state to participate in a federal program without its knowing agreement to the conditions of participation, it may conflict with the Tenth Amendment principle that Congress may not directly commandeer the states "to administer or enforce a federal regulatory program." *Printz v. United States*, 521 U.S. 898, 935 (1997). Here, the Act does not clearly require participating states to sue federal agencies that refuse to comply with an arbitration award, and therefore we cannot say that a state licensing agency participating in the Randolph-Sheppard program has accepted such an obligation knowingly. In the absence of a clear congressional intent to the contrary, the canon of constitutional avoidance counsels us to interpret the Act as not imposing such a condition on the states' participation in the vendor program. *See, e.g.*, *Edward J. DeBartolo Corp. v. Fl. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

**[6]** We also note that two of our sister circuits have held that an arbitration panel convened under § 107d-1(b) lacks authority to order a federal agency to take remedial action; under this interpretation of the Act, a state licensing agency would not have the ability (let alone the obligation) to enforce a § 107d-1(b) arbitration decision against the federal government. *See Md. State Dep't of Educ. v. U.S. Dep't of Veterans Affairs*, 98 F.3d 165, 169-70 (4th Cir. 1996); *Ga. Dep't of Human Res. v. Nash*, 915 F.2d 1482, 1492 (11th Cir. 1990). As we previously noted, under the provision governing arbitrations triggered by a state licensing agency, § 107d-2(b)(2), if the arbitration panel determines that a federal agency is engaging in acts or practices that violate the Act, "the head of [the federal agency] shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel." The Fourth and Eleventh Circuits have interpreted this language as indicating a congressional intent to make the federal agency solely responsible for remedying its own violations and thus to preclude an arbitration panel convened under § 107d-1(b)

from ordering the federal government to take any type of remedial action. *See Md. State Dep't of Educ.*, 98 F.3d at 169-70 ("[T]he statute places the responsibility for ending the violation on the head of the federal entity and does not authorize a § 107d-1(b) arbitration panel to order the federal entity to take specific remedial action."); *Nash*, 915 F.2d at 1492 ("[A]lthough the panel may determine that a violation is occurring and may identify the discrete acts that are in violation, the statute does not authorize the arbitration panel to order the federal entity to take any remedial action."). Under this interpretation, a state licensing agency would not be able to enforce an arbitration decision, because there would be no remedial award in the decision to enforce. We do not need to reach this issue here, but note that our sister circuits' opinions further weigh against interpreting the Act as requiring a state licensing agency to enforce the arbitration panel's remedial orders, given that under their interpretation of the Act, such suits would not be possible.

D

Zelickson's argument to the contrary relies primarily on our decision in *Premo v. Martin*, 119 F.3d 764 (9th Cir. 1997). In *Premo*, a state licensing agency appealed an arbitration award ruling that the state licensing agency had violated the Act by "refusing to secure the renovation of [a blind vendor's] facilities . . . , by failing to insist on assignment of income from competing vending machines to [the vendor], and by declining to take effective steps to prevent the [United States] Postal Service from renewing a contract with another vendor." *Id.* at 767. The arbitration panel had ordered the state licensing agency to reinstate the vendor and pay her compensatory damages in the form of lost income and attorney's fees and costs. *See id. Premo* affirmed the district court's decision upholding the award. *Id.* at 771-72. Zelickson argues that under *Premo*, a state licensing agency has a statutory obligation to protect a blind vendor from the federal government's violations of the Act, and an arbitration panel could properly

award compensatory damages against the state licensing agency for failing to do so.

We disagree. In *Premo*, the state licensing agency did not contest the arbitration panel's ruling that it had violated the Act. Instead, it challenged the award only on the grounds that the Eleventh Amendment barred the award of compensatory relief against a state, and that the Department of Education had violated the state licensing agency's due process rights by empaneling a biased arbitrator and refusing to admit certain testimony. *See id.* at 766. Our ruling was limited to these claims. Specifically, we held that the state licensing agency had waived its sovereign immunity by agreeing to participate in the Randolph-Sheppard program and that the arbitration panel was authorized to award compensatory damages. *Id.* at 768-70. We also rejected the state's due process argument. *Id.* at 771-72. We did not hold that a state licensing agency has a general statutory obligation to protect blind vendors from the federal government's violations of the Act. Indeed, we did not address the question whether the state licensing agency had violated the Act in the first place, because the issue was not raised. Accordingly, *Premo* does not shed light on the central question before us, namely, whether a state licensing agency has a duty to bring an enforcement action against a federal agency to enforce an arbitration award issued pursuant to 20 U.S.C. § 107d-1(b).

We also reject Zelickson's argument that we must read the Act as compelling a state licensing agency to sue a federal agency that refuses to comply with a § 107d-1(b) arbitration award because otherwise a blind vendor would have no way to protect his rights under the Act. The Act provides blind vendors with a detailed dispute resolution procedure, including a process for arbitrating grievances. It also imposes a duty on the head of the relevant federal agency to comply with the arbitration panel's ruling when a state licensing agency prevails in an arbitration proceeding. *See* § 107d-2(b)(2). But Congress did not see fit to require the state licensing agency

to sue the federal agency in control of the property on which the vending site is located to enforce the arbitration panel's award. We cannot rewrite the statute based on our own view of how best to carry out the purposes of the Act. Furthermore, a blind vendor may be able to obtain relief through other avenues, such as by a mandamus action under 28 U.S.C. § 1361, or an action to "compel agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1). We take no position on whether such an action would be successful.

## IV

**[7]** Accordingly, based on the plain language of the Act and other guides to statutory construction, we conclude that the Act does not impose a statutory obligation on a state licensing agency to sue a federal agency for its failure to comply with a Randolph-Sheppard arbitration award. The 2008 arbitration panel therefore committed a legal error when it interpreted the Act as requiring DOR to bring an action against GSA, and that DOR's failure to do so made it liable for compensatory damages. Because DOR had no statutory obligation to sue GSA to enforce the 2000 Arbitration Award, the 2008 arbitration panel's ruling that DOR became liable for the damages against GSA by failing to bring such an enforcement action was "not in accordance with law" and must be set aside. *See* 5 U.S.C. § 706(2).

**REVERSED.**