In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 20-1016 & 20-1115

STATE OF WISCONSIN, DEPARTMENT OF WORKFORCE
DEVELOPMENT–DIVISION OF VOCATIONAL REHABILITATION,

*Petitioner-Appellee,*

*v.*

UNITED STATES DEPARTMENT OF EDUCATION and BETSY DEVOS,
in her official capacity as Secretary of Education,

*Respondents-Appellees,*

*and*

THERESA TAYLOR,

*Respondent-Appellant.*

———————————

Appeals from the United States District Court for the
Western District of Wisconsin.
No. 3:18-cv-00220-jdp — **James D. Peterson**, *Chief Judge.*

———————————

ARGUED SEPTEMBER 21, 2020 — DECIDED NOVEMBER 12, 2020

———————————

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge*. The Randolph-Sheppard Act provides economic opportunities by granting blind persons priority to operate vending facilities at certain government properties. When a blind vendor, Jocelyn Belsha, was awarded certain vending operations in Racine County, Wisconsin, a different blind vendor, Theresa Taylor, became unhappy and challenged the award.

The Act is a federal law administered by state licensing agencies, so Taylor's challenge traveled first through Wisconsin's regulatory process, and then through federal administrative proceedings. Eventually an arbitration panel, convened to resolve Taylor's federal grievance, awarded her money damages and a permanent vending machine services contract for a site in Racine. Federal courts review such an award as a final action of a federal agency under the Administrative Procedure Act.

The district court vacated the arbitration panel's decision, ruling that there were no material deficiencies in the choice of Belsha for the Racine site, the arbitration panel's key factual findings were not supported by substantial evidence, and the arbitration panel's ultimate conclusion was arbitrary and capricious. We agree with the district court and affirm its decision for the state licensing agency and against Taylor.

## I

### A. Regulatory Overview

The Randolph-Sheppard Act (the "Act") "provid[es] blind persons with remunerative employment, enlarg[es] the economic opportunities of the blind, and stimulat[es] the blind to greater efforts in striving to make themselves self-support-ing[.]" 20 U.S.C. § 107(a). Under the Act, states license blind

persons to operate vending facilities through state licensing agencies. *See* 20 U.S.C. § 107(b). The federal government—specifically, the U.S. Department of Education ("the Department")—does not directly administer this blind vendor program. Instead, states do so through state licensing agencies. *Id.*). Here, the Wisconsin Department of Workforce Development, Division of Vocational Rehabilitation ("DWD") administers the program. WIS. ADMIN. CODE DWD § 60.01.

This arrangement triggers both state and federal regulatory procedures. After vending operations at a site are awarded, an unsuccessful applicant may challenge that decision and ask the state licensing agency to provide an evidentiary hearing. 20 U.S.C. § 107d-1(a); WIS. ADMIN. CODE DWD § 60.05(3). That hearing occurs before a panel that makes a recommendation to the administrator of the DWD, who then decides the dispute. WIS. ADMIN. CODE DWD § 60.06(3). After the state's administrative procedure has been completed, a vendor who wishes to challenge the state licensing agency's handling of an award may request that a federal arbitration panel, convened by the Department, consider the grievance. 20 U.S.C. § 107d-1(a). Federal courts review that arbitration panel's decision as a final agency action under the Administrative Procedure Act (the "APA"). 20 U.S.C. § 107d-2; 5 U.S.C. § 701.

## B. Factual Background

Back in October 2007, Respondent-Appellant Theresa Taylor accepted the DWD's invitation to run the vending machines at three southeastern Wisconsin correctional facilities on an interim basis: the Racine Correctional Institution, the

Sturtevant Transitional Facility,[1] and the Racine Youthful Offender Correctional Facility. The DWD considered the first two a single "stand-alone" facility ("Racine/Sturtevant") because together they provided full-time employment for a single vending operator. The DWD considered the third site ("Racine Youthful Offender") an "add-on" to be run in addition to an operator's existing sites. Taylor served as interim operator of these three sites for four years, but DWD always planned to bid out these sites on a permanent basis.

In July 2011, the DWD bid out the vending operations at the Racine Youthful Offender site on a permanent basis. Taylor and another licensed blind vendor, Jocelyn Belsha—who initially trained Taylor—interviewed with the DWD. On the interview questions, Taylor outscored Belsha, and the DWD awarded operation of the vending at the Racine Youthful Offender site to Taylor.

The central dispute in this case concerns the award of the stand-alone site at Racine/Sturtevant. In August 2011, Taylor and Belsha also interviewed to run the vending at that location. An interview panel individually scored and graded each candidate, although its objectivity was called into question because the scores contained cross-outs and rewrites without explanation. Belsha outscored Taylor, and the DWD awarded the Racine/Sturtevant site to Belsha. Doubt also emerged about the award process because Greg Feypel, who administered the award of vending sites through the DWD's business enterprise program, had earlier called Taylor about the Racine/Sturtevant bid. The parties dispute what each said

---

[1] Sturtevant is a village in Racine County, Wisconsin and is located near the City of Racine.

during the call: Feypel contends he and Taylor discussed the distinction between "stand-alone" and "add-on" sites, while Taylor asserts Feypel asked her to give a site to the struggling Belsha so the DWD could "even out" things.

The award of the Racine/Sturtevant site to Belsha led Taylor to file a grievance with the DWD. According to Taylor, the DWD violated WIS. ADMIN. CODE DWD § 60.08(1), which requires that it select "the licensee deemed to be best suited for an available business enterprise[.]" The DWD held a hearing on Taylor's grievance, and its acting administrator denied it. So in December 2011, Taylor requested a full evidentiary hearing under 20 U.S.C. § 107d-1(a) and Wis. Stat. § 47.03. That took place in May 2012, and the evidentiary hearing panel found issues with the bidding process for the Racine/Sturtevant site. As a result, that panel made a number of recommendations to the acting administrator of the DWD, including that Belsha's selection be set aside. Those recommendations were largely adopted, but Belsha—not Taylor—was allowed to continue as interim operator of the Racine/Sturtevant vending operations.

Notwithstanding this outcome on the state level, Taylor shifted her challenge to the federal regulatory process. As noted above, a dissatisfied applicant may file a complaint with the Secretary of Education. 20 U.S.C. § 107d-1(a); *see* WIS. ADMIN. CODE DWD § 60.05(4). Upon receipt of the complaint, the Department convenes an arbitration panel to resolve the dispute. 20 U.S.C. § 107d-1(a).[2] In June 2012, Taylor filed such

---

[2] The arbitration panel consists of three members: one designated by the state licensing agency, one designated by the blind licensee, and the chair selected by the other two members. 20 U.S.C. § 107d-2(b)(1). If either party fails to designate an arbitration panel member, the Department must do

a complaint alleging discrimination and retaliation in viola-
tion of the "best-suited" blind vendor provision. WIS. ADMIN.
CODE DWD § 60.08(1). She requested she be named the per-
manent operator of the Racine/Sturtevant vending site and re-
ceive financial compensation.

While Taylor's federal complaint was pending, however,
the DWD issued new selection rules for stand-alone sites on
the state level. When doing so, the DWD sought and received
comments from a pool of blind vendors and a coordination
committee. Belsha served on that committee, and administra-
tor Feypal still worked for the business enterprise program
throughout that comment period. Meanwhile, the Depart-
ment acknowledged receipt of Taylor's complaint and noti-
fied the acting administrator of the DWD that the complaint
was under review on the federal level.

In June 2013, under the new state selection rules, the DWD
invited the four applicants for the Racine/Sturtevant site to
reinterview, a process that unfolded parallel with Taylor's
complaint to the Department. Taylor contacted the business
enterprise program director, Lorie Lange, and asked how the
reinterviews would be administered, and whether candidates
would be evaluated based on their business status as of the

---

so on the party's behalf. *Id.* These independent members, selected on an
ad hoc basis, are not Department officials, and the Department has no con-
trol over them. *See Sauer v. U.S. Dep't of Educ.*, 668 F.3d 644, 650 (9th Cir.
2012) (noting that "an arbitration panel is composed of members ap-
pointed by the parties to the arbitration, not of Department of Education
officials"). Although we consider the arbitration panel's decision as the
Department's final agency action, that is more a "legal fiction" created for
purposes of federal review. *See id.*; 20 U.S.C. § 107d-2(a) (arbitration panel
decision "shall be subject to appeal and review as a final agency action"
under the APA).

original 2011 Racine/Sturtevant interview. One of Lange's deputies ultimately told Taylor of the new selection procedures, and informed her that the reinterview process would use business data from 2013 rather than 2011.

Rather than participate in the reinterview process, Taylor withdrew due to her pending federal complaint. She strongly disagreed with the reinterview, arguing it ran contrary to the decision rendered by the panel members at the evidentiary hearing. Taylor also found it unacceptable to conduct a reinterview for a site bid out two years previously and based on a vending operator's current business status. The reinterviews proceeded without Taylor, and the DWD again awarded the Racine/Sturtevant site to Belsha.

In October 2013, Taylor filed an amended complaint with the Department. She added in her objections to the reinterview process, including taking issue with the use of business data from 2013 and not 2011. In July 2015, the Department notified Taylor and the DWD that it planned to convene a three-member arbitration panel to hear Taylor's grievance. And in September 2017, that arbitration finally took place.

The arbitration panel rendered its decision in February 2018, splitting 2-1 in favor of Taylor. That panel found that the DWD "acted in an arbitrary, capricious and biased manner" when it failed to award Taylor the Racine/Sturtevant site during the two selection processes. According to the arbitration panel, Taylor had proved her case "by substantial evidence," but in any event, she would have also prevailed under a "preponderance of the evidence" test.

As for the 2011 interviews, the arbitration panel concluded that the DWD had violated its own policies and procedures,

demonstrated bias during the 2011 selection process, and failed to adequately justify its initial decision to award Racine/Sturtevant to Belsha. The arbitration panel fully agreed with the evidentiary hearing panel's decision to redo the interview process. The arbitration panel also concluded that the evidentiary hearing panel's recommendations should have been followed in their entirety as to the 2013 reinterviews. Specifically, the arbitration panel found that after the evidentiary hearing panel decision, Taylor, not Belsha, should have been appointed interim operator of the Racine/Sturtevant site. The arbitration panel also found that the DWD had put Taylor at a disadvantage by using the 2013 business data, as Taylor had been interim operator of Racine/Sturtevant in 2011 and such prisons sites are more profitable. The arbitration panel further found that the delay in scheduling the reinterviews unfairly and inequitably harmed Taylor's candidacy. The arbitration panel also ruled on remedies, ordering that Taylor become permanent operator of the Racine/Sturtevant site, granting her compensatory relief for lost profits, and awarding her legal fees and costs.

## C. District Court Proceedings

In 2018, in federal district court, the DWD filed a complaint and petitioned for judicial review of the arbitration panel's decision favoring Taylor. Taylor also moved to confirm and to enforce the arbitration panel's award. The Department submitted the administrative record, and the district court considered the parties' cross-motions concerning the arbitration award. The court denied Taylor's motion to confirm and enforce the arbitration award but granted the DWD's request to vacate and reverse the arbitration panel's decision, identifying "foundational" and "substantive" problems with

the arbitration panel's decision. These problems included that the arbitration panel applied the wrong burden of proof. The district court also disagreed with the arbitration panel's conclusion that the "DWD was relentlessly biased against Taylor," reading the entire record differently and concluding that the 2013 reinterviews eliminated any bias against Taylor, as Feypel did not participate. Belsha's lack of participation in the arbitration panel also presented a difficulty.

The district court further concluded that substantial evidence did not support the arbitration panel's findings of deficiency, and that the arbitration panel acted arbitrarily and capriciously in ruling for Taylor. As to remedies, the district court set aside the compensatory damages, attorneys' fees, and costs based on Wisconsin's sovereign immunity, adopting the reasoning from *Wisconsin Dep't of Workforce Dev., Division of Vocational Rehab. v. U. S. Dep't of Educ.*, 667 F.Supp.2d 1007, 1012–13 (W.D. Wis. 2009).

Earlier this year, Taylor appealed to this court. Federal question jurisdiction exists under 5 U.S.C. § 701 *et seq.*, 20 U.S.C. § 107d-2(a),[3] and 28 U.S.C. § 1331, and this court has appellate jurisdiction under 28 U.S.C. §1291.

---

[3] The Department's role in this case, with one qualification, is nominal. Besides submitting the administrative record, the Department convened the arbitration panel (whose findings and opinions the district court reviewed), covered the cost of the arbitration, and has oversight and funding responsibility for administration of the Act. *See* 20 U.S.C. § 107d-1(a). But the Department had no substantive involvement in the opinions and orders issued by the panel, and the Department did not review, affirm, reverse, or comment on the panel decision. This case names the Department as a Respondent-Appellee because the Act makes the panel decision

## II

The Randolph-Sheppard Act directs federal courts to review arbitration panel decisions under APA standards. *See* 20 U.S.C. § 107d-2(a). As relevant here, "[t]he reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence in a case … ." 5 U.S.C. § 706(2)(A), (D), (E). "Those standards overlap." *Orchard Hill Bldg. Co. v. U.S. Army Corps of Eng'rs*, 893 F.3d 1017, 1024 (7th Cir. 2018).

A determination is arbitrary and capricious if it "runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Zero Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 668 (7th Cir. 2017). It "is unsupported by substantial evidence when the record lacks evidence that 'a reasonable mind might accept as adequate to support the

---

a final agency action of the Department, 20 U.S.C. § 107d-2(a), but it is so in name only as to the rights, claims, and remedies submitted for review.

The Department did take one procedural step worth noting. After the DWD appealed, the district court vacated and reversed the panel decision. The district court also remanded the case to the Department to affirm the DWD's award. Because the Department lacks authority to affirm the DWD's award—and that step was unnecessary in any event—the Department filed in the district court an unopposed motion to amend the judgment to remove the remand instruction, which the district court granted. Other than that motion, the Department did not involve itself in the district court case. On appeal the Department did not participate in briefing or oral argument.

conclusion.'" *Orchard Hill Bldg. Co.*, 893 F.3d at 1024 (quoting *Zero Zone*, 832 F.3d at 668). Under either standard, the scope of review is "narrow and a court must not substitute its judgment for that of the agency." *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012). Still, the "APA requires meaningful review." *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999). "A court, in other words, should deferentially examine an agency's work, but not rubberstamp it." *Orchard Hill*, 893 F.3d at 1024 (footnoted omitted). And it "should not attempt itself to make up for … deficiencies" in an agency's reasoning. *Zero Zone*, 832 F.3d at 668; *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983).

Taylor defends the arbitration panel's decisions to award her the vending operations at the Racine/Sturtevant site as well as damages. She contends the district court erred when it found that the arbitration panel: (A) applied the incorrect burden of proof; (B) lacked substantial evidence for its key findings; and (C) arbitrarily and capriciously awarded remedies.

### A. Burden of Proof

Taylor argues the district court erred first when it ruled that her burden of proof before the arbitration panel was preponderance of the evidence. She defends the arbitration panel's use of the more deferential substantial evidence standard of review.

As an initial matter, the party seeking relief at an agency evidentiary hearing bears the burden of proof. 5 U.S.C. § 556(d) ("Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof.") This statute means that preponderance of the evidence is the burden

of proof on the party seeking an order at an agency hearing. *See Steadman v. SEC*, 450 U.S. 91, 102 (1981) (holding that proponent of a rule or order under the predecessor to § 556(d) had to meet its burden by preponderance of the evidence); *see also Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 138–39 (1997) ("5 U.S.C. § 556(d) … places the burden of persuasion on the proponent of an order; when the evidence is evenly balanced, the proponent loses." (citations omitted)); *Berron v. Illinois Concealed Carry Licensing Review Bd.*, 825 F.3d 843, 847–48 (7th Cir. 2016) ("As a matter of administrative law, the proponent of a position bears the burden of showing entitlement by a preponderance of the evidence."); *Mach Mining, LLC v. Sec'y of Labor, Mine Safety & Health Admin.*, 728 F.3d 643, 647 & n.7 (7th Cir. 2013) ("*Steadman* … specifically held that section 7(c) of the APA established a 'traditional preponderance-of-the-evidence standard.' Section 7(c) of the APA was codified at § 556(d) … ." (citation omitted)).

So Taylor, as the proponent of a ruling that the DWD had violated the law, bore the burden of proof before the arbitration panel to show that violation by a preponderance of the evidence. Yet the arbitration panel, over the DWD's objections, applied a standard of review, substantial evidence. The arbitration panel cited *Wisconsin Dep't of Workforce Dev., Div. of Vocational Rehab. v. U.S. Dep't of Educ.*, 667 F. Supp. 2d 1007 (W.D. 2009). But that decision applied the substantial evidence standard of review in its APA assessment under 5 U.S.C. § 706(2) of the arbitration panel decision in that case. *Id.* at 1017–18. The arbitration panel here mistakenly substituted the APA standard of review for the burden of proof of the disappointed vendor.

This application of the wrong burden of proof had damaging consequences. It effectively and incorrectly shifted the burden of proof to the DWD, as the district court rightly noted. The arbitration panel's consideration of those facts under the incorrect burden of proof permeated its findings.

At one point, the arbitration panel hedges on this question, stating "even assuming, *arguendo*, that the preponderance of the evidence test should be used, the panel finds that Taylor in any event has met that heavier burden." But at other points—such as when the arbitration panel cited to the DWD's failure to present evidence to explain its decisions— the panel gave Taylor the benefit of the doubt, even though Taylor had to show that these decisions were arbitrary and capricious. As the district court noted, this confirmed the panel's application of the more deferential but incorrect standard. And without explanation of how Taylor's evidence would have met the greater preponderance of the evidence burden, the arbitration panel's decision cannot be correct.

Before us, Taylor fails to cite any persuasive authority for her reading of 5 U.S.C. § 556(d). Without any findings made under the stricter preponderance of the evidence burden of proof, the arbitration panel's decision cannot stand. And under the APA, a federal court may "hold unlawful and set aside agency action, … found to be … without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Because the arbitration panel applied the wrong burden of proof, it did not observe the required procedure for conducting an evidentiary hearing. So the district court correctly concluded that the arbitration panel fundamentally erred when it applied the incorrect burden of proof.

When finding facts, arbitration panels under the Act must apply a preponderance of the evidence standard. Only on review of an arbitration panel's findings by a federal court does the substantial evidence standard apply.

### B. Substantial Evidence Review

Taylor endorses the arbitration panel's findings on several topics and disagrees with the district court's conclusion that those findings lack substantial evidence. Those findings by the arbitration panel—all faulting the DWD—included:

1. the use of 2013 rather than 2011 business data in the 2013 reinterviews;

2. the failure of the DWD administrator to accept letters of recommendation;

3. the decision to make Belsha and not Taylor the interim operator of the Racine/Sturtevant site; and

4. the delay between the DWD administrator's decision and the 2013 reinterviews.

The district court concluded that these findings of fact are not supported by substantial evidence. Review of the record confirms the district court's decision.

First, the arbitration panel determined that in the 2013 reinterviews the DWD should have evaluated Taylor based on her 2011 profitability data, not 2013 data. Taylor testified that prison sites such as Racine/Sturtevant are more profitable than non-prison sites, and in 2011 Taylor served as the interim operator at Racine-Sturtevant, but did not do so in 2013.

But substantial evidence does not support the arbitration panel's finding that the 2013 data disadvantaged Taylor. Only

two questions in the 2013 selection criteria assessed profitability data. And the arbitration hearing record does not contain evidence of what Taylor's and Belsha's profitability scores would have been using the 2013 data; indeed, Taylor even chose not to reinterview in 2013. Further, the record evidence does not support Taylor's testimony that losing the Racine/Sturtevant site diminished her profitability, as her net profit in 2011 at prison and non-prison sites was nearly identical.

Second, the arbitration panel found fault with the DWD's failure to accept letters of recommendation. Specifically, the arbitration panel stated that accepting letters "would have helped negate the internal bias [that the DWD] demonstrated during the selection process in favor of selecting Belsha as permanent operator [of Racine/Sturtevant.]" But substantial evidence does not support such a finding of bias. For example, Feypel scored Taylor and Belsha the same, and after the 2011 interviews the DWD awarded Taylor two other vending sites outside of the normal bidding process. Regardless, Feypel did not participate in the 2013 reinterviews, which also cleansed the process from any anti-Taylor bias if any existed in the first place.

The DWD explained why it did not accept recommendation letters: Taylor and Belsha were already incumbent vendors well known to the business enterprise program. Even if the DWD's rationale for not accepting letters may have contravened Wisconsin privacy laws as confidential information requiring informed consent for disclosure, WIS. ADMIN. CODE DWD § 68.04, the letter for Taylor would not have made a difference. It was brief—only six sentences long—and generic in its praise. So the arbitration panel finding that such a letter

would have significantly affected the award process is not well supported.

Third, the arbitration panel found that the DWD should have followed the interim operator recommendation made by the evidentiary hearing panel. After the evidentiary hearing panel made its recommendations in favor of Taylor, the DWD administrator still retained Belsha as the interim operator at the Racine/Sturtevant site to minimize disruption. The arbitration panel found that the DWD had offered no evidence to support that decision. Yet the arbitration panel's own finding on this lacks substantial evidence.

This is because the evidentiary hearing panel did not say who should serve as interim operator while a second interview process was held. It made no recommendation on the subject, which alone renders the arbitration panel's finding suspect. Moreover, as the DWD contended, leaving Belsha in place until the reinterviews also limited further disruption. It meant only one operational change at the site (if Taylor prevailed, from Belsha to Taylor), or potentially no change (if Belsha prevailed). If Taylor took over, that meant potentially two changes (Taylor as interim operator, to Belsha as a result of the initial award, then back to Taylor if there was a change in interim operator, followed by Belsha again if Belsha prevailed at the reinterviews). The district court correctly identified the arbitration panel's flawed factual finding here.

Fourth, the arbitration panel found that the delay between the 2011 decision awarding the Racine/Sturtevant site to Belsha and the 2013 reinterviews unfairly and severely harmed Taylor. A twenty-month delay did occur between the interviews and the reinterviews. But abundant evidence supports the DWD's explanation for the delay, which lacks the malice

presumed by the arbitration panel. Although Lange, the business enterprise program director, did not learn of the need to reinterview until May 2013, during this time frame the state licensing agency had been working on developing new selection criteria with a committee of blind vendors, as required by WIS. ADMIN. CODE DWD § 60.03(5)(a) (which establishes the committee and requires its active participation in the agency's work). According to the record evidence bureaucracy, not bad faith, caused the delay. And the delay did not necessarily strengthen Belsha's argument to be awarded the Racine/Sturtevant site because the record contains no evidence of either Belsha's or Taylor's profitability in 2013. The arbitration panel also failed to detail why the delay harmed Taylor, yet as noted above Taylor had the burden of proof. In summary, the arbitration panel improperly assumed, without evidence, that the DWD both purposely designed the delay and did so to favor Belsha.

This review of the evidence illustrates that the district court correctly concluded that substantial evidence did not support several material findings of fact by the arbitration panel.

### C. Arbitrary and Capricious Review

As for the remedy, the arbitration panel concluded that Taylor was best suited to operate the Racine/Sturtevant site. To the district court, that decision was arbitrary and capricious as "counter to the evidence before the agency, or [] so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Orchard Hill*, 893 F.3d at 1024.

The district court gave two main reasons for overruling the arbitration panel's remedy. First, information about competing vendors—particularly, Belsha—was not in the record, so the panel could not reliably gauge the relative merits of their applications. And second, Taylor must take responsibility for that omission, as in what must be deemed a strategic error she chose unreasonably not to participate in the 2013 reinterview process. If Taylor had reinterviewed, she would have had a stronger case because record evidence would have existed concerning her 2013 qualifications.

Taylor argues the DWD presented no evidence that Belsha was better suited than her to operate the facilities at Racine/Sturtevant. But as described above, the DWD had no burden to prove Belsha was the better candidate. Taylor had that burden, and Belsha participated in the 2013 reinterview process while Taylor did not. And if Taylor's complaint is that the DWD implemented an equitable policy, rather than one based on merit, she could have offered that argument, but she did not.

Taylor also complains that notwithstanding the evidentiary hearing panel's recommendation that Taylor be awarded the Racine/Sturtevant site, the DWD kept Belsha on during the reinterview process. But during that time Belsha remained as interim operator. Only after the reinterviews were complete did the DWD name Belsha the permanent operator of the Racine/Sturtevant facility.

The district court correctly decided that the arbitration panel acted arbitrarily and capriciously when it chose Taylor as the best-suited operator for the Racine/Sturtevant site. As previously noted, the arbitration panel could not dependably assess the candidacies of competing applications because

Taylor chose not to participate in the 2013 reinterviews. She declined believing the use of the 2013 data was not fair, but that decision meant she could not provide record evidence of her 2013 profitability data. Taylor's failure to take part precluded the arbitration panel from having a record upon which it could compare and contrast the various applicants.[4] So the arbitration panel acted arbitrarily and capriciously in deciding for Taylor.

A final note: Because we affirm the district court's decision for the DWD, we need not reach the question of sovereign immunity and relief or the arbitration panel's various rulings making Taylor the permanent operator at the Racine/Sturtevant site, awarding monetary damages, and attorneys' fees and costs. Each of these rulings remain vacated.

### III

Taylor's appointment to Racine/Sturtevant by the arbitration panel ran afoul of administrative procedure in several ways. The arbitration panel misapprehended the burden of proof, its key factual findings were not supported by substantial evidence, and its decision for Taylor as the best operator for the Racine/Sturtevant site is contrary to the evidence and thus arbitrary and capricious. The district court correctly recognized these deficiencies and ordered judgment to the DWD against Taylor vacating and reversing an award of money damages and a permanent vending machine services contract

---

[4] Taylor contends the DWD administrator's final decision did not comply with Wisconsin law because it did not contain findings of fact and conclusions of law. She raises this argument for the first time on appeal, so she has waived it. *Henry v. Hulett*, 969 F.3d 769, 785–86 (7th Cir. 2020) (en banc).

for the Racine/Sturtevant site. We AFFIRM the district court's decision.